```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

LOUIS VAN CLEEF,

                Plaintiff,        08-CV-6403

        v.                    **DECISION and ORDER**

```
SENECA COUNTY, a municipal corporation,
SENECA COUNTY SHERIFF'S DEPARTMENT,
LEO T. CONNOLLY, Individually and in
his Capacity as SENECA COUNTY SHERIFF,
JAMES LARSON, Individually and in his
Capacity as SENECA COUNTY Undersheriff,
```

                Defendants.
___

## **INTRODUCTION**

Plaintiff Louis Van Cleef ("Plaintiff" and/or "Van Cleef") brings this action against defendants Seneca County, the Seneca County Sheriff's Department ("Sheriff's Department"), Leo T. Connolly, Individually and in his capacity as Seneca County Sheriff ("Connolly"), and James Larson, Individually and in his capacity as Seneca County Undersheriff ("Larson") (collectively "defendants") pursuant to 42 U.S.C. §1983 claiming that the defendants violated his civil rights under the United States Constitution and New York State Law. Specifically, plaintiff alleges three separate causes of action including: (1) First Amendment retaliation; (2) Monell violations by maintaining unconstitutional policies that allowed officers to violate the rights of public employees; and (3) "Class-of-one" theory of Equal Protection. Plaintiff seeks compensatory damages, punitive damages, attorney's fees and costs as well as prejudgment interest for the deprivation of his civil rights.

Defendants, Seneca County, the Sheriff's Department and Larson move to dismiss plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), alleging that plaintiff has failed to state a claim upon which relief may be granted and that they are entitled to a dismissal as a matter of law. Defendant Larson further contends that he is entitled to qualified immunity. In addition, Connolly moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Plaintiff has opposed all motions filed against him. For the reasons set forth below, defendants' motions to dismiss under 12(b)(6) and motion for judgment on the pleadings under 12(c) are granted.

## BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiff's Complaint. Plaintiff began working for the Sheriff's Department in 1993 and currently holds the position of drug investigator with the rank of Lieutenant. See Complaint, ¶¶4,10,12. He alleges that his problems with his employer started in the fall of 2004 when plaintiff, together with Larson and other co-workers were planning a non work-related trip to Florida. See id. ¶13. It is alleged that Larson obtained approval from Connolly to treat the Florida vacation as work-related training. See id. ¶14. Plaintiff claims he informed Connolly that he was uncomfortable with using Seneca County time for personal vacation of employees. See id. ¶15. In addition, plaintiff alleges that Connolly threatened him and

insisted that plaintiff treat the Florida vacation as official training. See id. ¶18.

In January 2005, plaintiff attended a conference in Buffalo with Larson and other co-workers. See id. ¶19. According to plaintiff, Seneca County was charged for the conference. See id. ¶20. However, plaintiff alleges that Larson encouraged plaintiff and his co-workers to leave the conference before it actually started. See id. Plaintiff claims he communicated his disapproval of Larson's conduct. See id. ¶21. Ever since plaintiff voiced his objections regarding events that began in the fall of 2004, plaintiff alleges he experienced retaliation from Connolly and Larson which "ma[de] his life hell" including: alienating him from his co-workers; instigating a drug investigation of plaintiff and his girlfriend; conducting surveillance on plaintiff; subjecting plaintiff to disparate scrutiny at the office; giving plaintiff unfavorable work assignments; creating bias against him from other co-workers; attempting to discipline or discharge plaintiff on false grounds; using the District Attorney's office to make false accusations against plaintiff; and attempting to ruin plaintiff's personal and professional reputation. See id. ¶25.

## DISCUSSION

### I. Motion for Judgment on the Pleadings and Motions to Dismiss

A Rule 12(c) motion is decided under the same standard as a

Rule 12(b)(6) motion. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)"), cert. denied, 531 U.S. 1052 (2000); see also Desiano v. Warner-Lambert & Co., 467 F.3d 85, 89 (2d Cir.2006). In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must "accept...all factual allegations in the complaint and draw...all reasonable inferences in the plaintiff's favor." See Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008) (internal quotation marks omitted). In order to withstand dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007) (disavowing the oft-quoted statement from Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. at 1965 (internal quotation marks omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff [to]

provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" See Goldstein v. Pataki, 516 F.3d 50, 56-57 (2d Cir.2008) (quoting Twombly, 127 S.Ct. at 1974).

## II. Plaintiff's First Amendment Retaliation Claim is Dismissed

The Second Circuit Court of Appeals has acknowledged that "the elements of a First Amendment retaliation claim are dependent on the 'factual context' of the case before the district court." See Lukowski v. County of Seneca et al., 2009 WL 467075, at *6 (W.D.N.Y.2009) (J.Telesca) citing Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir.2008). In this instance, where the plaintiff, a lieutenant in the Sheriff's Department is a public employee who claims First Amendment retaliation, he must allege the following: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." See Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir.2003) (internal quotation marks and citations omitted); Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir.2005); see also Woodlock v. Orange Ulster B.O.C.E.S., 281 Fed.Appx. 66, 68, 2008 WL 2415726 at *1 (2d Cir. 2008); Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir.2006)); Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir.1996).

The First Amendment protects the right of public employees to speak-out without fear of reprisal on issues of public concern. See Frank v. Relin, 1 F.3d 1317 (2d Cir., 1993), cert. denied, 510 U.S. 1012 (1993); see also Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 780 (2d Cir.1991) (It is well-settled that a public employer may not discharge an employee in retaliation for the exercise of his or her free speech right). However:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency in reaction to an employee's behavior.

See Connick v. Myers, 461 U.S. 138, 147 (1983). Moreover, even where an employee has spoken out on matters of public concern, a public employer may still take employment action against the employee if the speech is likely to, or in fact has, disrupted the performance of governmental activities, or is detrimental to governmental efficiency. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006); Mandell v. Cty. of Suffolk, 316 F.3d 368 (2d Cir. 2003); Connick, 461 U.S. at 140 (While a public employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," the government, as an employer, has an interest "in promoting the efficiency of the public services it performs through its employees"). Thus, this Court is charged with

the task of balancing these competing interests.

Whether or not particular speech relates to a matter of public concern is "ordinarily a question of law decided on the whole record by taking into account the content, form, and context of the given statement." See Melzer v. Bd. of Educ., 336 F.3d 185, 196 (2d Cir.2003); see also Ruotolo, 514 F.3d at 189. If the plaintiff is able to establish a prima facie case of retaliation, the court must then determine whether or not the government employer was justified in taking action against the employee. See Garcetti v. Cebballos, 547 U.S. 410 (2006).

Applying the above principles to the instant case, I find that plaintiff's speech–-his allegations about objecting to Connolly regarding Connolly's insistence that plaintiff treat the Florida vacation as official training and his disapproval regarding leaving a work-related conference in Buffalo paid for by Seneca County before its commencement due to Larson's insistence--was in relation to the scope of his employment as a lieutenant with the Sheriff's Department and not protected speech under the Garcetti Court's interpretation of the First Amendment. Even when considering the Complaint in the light most favorable to plaintiff, the allegations show that plaintiff was speaking as an employee and not as a citizen when he complained to Connolly regarding the Florida trip (see Complaint ¶¶ 15,16,18) and when he voiced his disapproval that Larson put expenses on Seneca County from a weekend trip to attend a conference in Buffalo and yet insisted that he and his co-workers

leave before the conference began. See id. ¶¶20,21. Accordingly, plaintiff was not engaged in protected speech and cannot proceed on a First Amendment retaliation claim. See Ruotolo, 514 F3d at 187-88. Plaintiff's first cause of action as to all defendants is dismissed.

Further, the fact that a statement is made in private and at work, militates against a finding of "public concern," but is not dispositive. See Garcetti, 547 U.S. at 421 ("That [plaintiff] expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work"). Matters that are purely personal or calculated to redress personal grievances will not qualify as public concerns. See Hoyt v. Andreucci, 433 F.3d 320, 330 (2d Cir.2006). Moreover, comments by a public employee on internal office matters do not constitute public concern and thus are not entitled to constitutional protection. See Connick, 461 U.S. at 148-149 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case."); Kelly v. City of Mount Vernon, 344 F.Supp.2d 395, 402 (S.D.N.Y.2004) ("Speech that relates primarily to matters of personal interest or internal office affairs, in which the individual speaks as an employee rather than as a citizen, cannot support a First Amendment claim."); Cahill v. O'Donnell, 75

F.Supp.2d 264, 272 (S.D.N.Y.1999) (same).

Here, as alleged in the Complaint, plaintiff spoke on both occasions as an employee, and in private. In addition, the comments as asserted in the Complaint contain no sense of urgency, nor formality, nor inclination to warn the citizenry of some pending harm. There is no allegation of any concern for the public welfare. For instance, plaintiff's allegation that he spoke to Connolly concerning the use of Seneca County hours for the dive training in Florida, was ordinary speech in an employment context regarding whether to use Seneca County time or his personal vacation time for the Florida trip. The same is true with respect to the second instance when plaintiff complained of the Buffalo conference. Plaintiff does not allege that he made the statement to relevant authorities or to the public. Assuming plaintiff directly complained to Larson, it was routine speech concerning an employment issue made in an employment context within institutional channels and accordingly, purely private speech.

The content, form, and context of the comments alleged in plaintiff's Complaint do not suggest plaintiff was speaking as a citizen on a matter of public concern, but rather as an employee upset at what he was witnessing. Compare Fusco v. City of Rensselaer, N.Y., 2006 WL 752794, at *8 (N.D.N.Y.2006) ("[S]peech about individual or isolated problems within a police department, or one of its officers, are not matters of public concern") with Morris v. Lindau 196 F.3d 102, 111 (2d Cir.1999) (holding the

public expressions of police officers which "included speech on crime rates, police staffing, equipment shortages and related budgetary matters quite plainly involve matters of public concern"). Thus, plaintiff's first cause of action, asserting a violation of his First Amendment retaliation claim is dismissed.

### III. Equal Protection Claim

Defendants move to dismiss the third count of the plaintiff's Complaint where plaintiff claims that he was "treated differently from similarly situated public employees...." See Complaint ¶42. Plaintiff does not allege discrimination in violation of the Equal Protection Clause based on membership in a protected class. The claim presented in the third count is a "class of one" equal protection claim. In other words, the claims do not allege unequal treatment of the plaintiff based on his race, religion, sex or membership in any other identifiable class. Rather, the claims allege unequal treatment of the plaintiff for reasons that are either arbitrary or malicious.

The Equal Protection Clause "requires that the government treat all similarly situated people alike." See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.2001); Latrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, 69 (2d Cir.1999) (The Equal Protection Clause is "essentially a direction that all persons similarly situated be treated alike") (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). An individual not alleging invidious discrimination on the basis of

membership in some group may nevertheless prevail on an equal protection claim under the "class of one" theory recognized by the Supreme Court in Willowbrook v. Olech, 528 U.S. 562 (2000).[1]

In Engquist v. Oregon Dep't of Agriculture, --- U.S. ---, 128 S.Ct. 2146, 2148-49 (2007), the Supreme Court held that the "class-of-one theory of equal protection [recognized in Olech] has no place in the public employment context." See also Appel v. Spiridon, 531 F.3d 138, 141 (2d Cir.2008) (class-of-one theory of equal protection is unavailable to public employees); Clayton v. City of Middletown, 564 F.Supp.2d 105, 114-15 (D.Conn. 2008). Accordingly, this case falls squarely within the ambit of the Engquist decision. Plaintiff however, attempts to distinguish Engquist in two ways. First, he argues that Enquist is "directed not at constitutional violations but at claims that an individual exercise of 'managerial discretion' is arbitrary and thus violative of equal protection." See Pl. Br. at 6. Second, plaintiff contends that "Enquist is not applicable to claims of violation of equal protection based on a clear denial of what is an established constitutional right." See id. at 7.

Plaintiff's arguments are meritless and misapply the basic holding of Engquist. The decision recognizes that the class-of-one theory of equal protection-which presupposes that like individuals

---

[1] Under a "class of one" equal protection claim, a plaintiff must show that (1) "[he] has been intentionally treated differently from others similarly situated and" (2) "there is no rational basis for the difference in treatment." See Olech, 528 U.S. at 564; see also Giordano v. City of New York, 274 F.3d 740, 743 (2d Cir.2000).

should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review-is simply a poor fit in the public employment context. See Engquist, 128 S.Ct. at 2148-49 (Court observed that in the employment context, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted [the employer]"). To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer- employee relationship. See id. at 2155. Thus, a public employee like the plaintiff who does not contend that he is being subjected to invidious discrimination based upon membership in a protected class and rather believes he has been mistreated due to personal malice on the part of a supervisor may no longer proceed on a class of one theory. See id. at 2149; see also Appel, 531 F.3d at 141.

Although a plaintiff can bring a "class of one" equal protection claim, see Olech, 528 U.S. at 564 (noting a "class of one" exists "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment") (internal quotation marks omitted), Van Cleef cannot. As stated above, the "class-of-one" theory is inapplicable in the

public employment context. See Engquist, 128 S.Ct. at 2146; see also Deal v. Seneca County et al., 2009 WL 497633, at *2 (W.D.N.Y.2009)(J.Telesca). Thus, I grant defendants' motion to dismiss the third count of plaintiff's Complaint with prejudice.

**IV.　Monell Violations**

Defendants move to dismiss plaintiff's second cause of action on the basis that a Monell claim may not be maintained against defendants in the absence of an underlying constitutional violation. See Larson Br. at 7-8; Seneca County Br. at 6; Connolly Br. at 6-7. Under Monell, a municipal entity may be held liable under §1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." See Monell v. Dep't of Social Servs., 436 U.S. 658, 694-95 (1978); Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir.2004) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733-36 (1989), and Monell, 436 U.S. at 692-94).[2] A municipal entity, however, may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under §1983 on a *respondeat superior* theory." See Monell, 436 U.S. at 691; Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.1983) (municipality cannot be held liable under §1983 for the actions of its employees or agents on the basis of *respondeat superior*), citing

---

[2] "The policy or custom need not be memorialized in a specific rule or regulation." See Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir.1996) (citing Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir.1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" See Patterson, 375 F.3d at 226 (quoting Kern, 93 F.3d at 44).

Monell, 436 U.S. at 691; see also Segal v. City of New York, 459 F.3d 207, 219 (2d Cir.2006) ("Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs it has sanctioned, led to an independent constitutional violation.")[3]

Here, since the Court finds that plaintiff has failed to plead that a constitutional violation was committed against him by the individual defendants (see Points II and III), no Monell claim can lie against Seneca County and the Sheriff's Department pursuant to §1983. See Segal 459 F.3d at 219 ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct."); accord Vippolis v. Haverstraw, 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who ... subjected, or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights.") (citing 42 U.S.C. §1983).

Similarly, as it relates to the individual defendants Connolly and Larson, being sued in their official capacities, the claims against them are duplicative of the Monell claim against Seneca

---

[3] See Wray v. City of New York, 490 F.3d 189, 195 (2d Cir.2007) (To hold "'a city liable under §1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'") quoting Batista, 702 F.2d at 397.

County. See Tsotesi v. Bd. of Educ., 258 F.Supp.2d 336, 338 n. 10 (S.D.N.Y.2003) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)); see also Monell, 436 U.S. at 691 (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Accordingly, the Monell claims against the individual defendants in their official capacities also do not survive the motions to dismiss. Thus, plaintiff has failed to state a Monell violation claim and his second cause of action is dismissed.[4]

## CONCLUSION

The Court therefore finds the following: (1) plaintiff's First Cause of Action, asserting a violation of First Amendment retaliation claim is dismissed without prejudice; (2) plaintiff's Second Cause of Action, asserting Monell violations is dismissed without prejudice; and (3) plaintiff's Third Cause of Action, asserting a violation of Equal Protection class-of-one claim is dismissed with prejudice. For the reasons set forth above, I grant the motions to dismiss brought by the defendants pursuant to the Fed.R.Civ.P. 12(b)(6) and 12(c), and dismiss plaintiff's Complaint in its entirety.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
April 27, 2009

---

[4] Because the defendants' motions to dismiss pursuant to Rule 12(b)(6) and 12(c) are granted, the Court need not consider defendant Larson's other ground to dismiss (i.e. qualified immunity) since it is now moot.